## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| BIRMINGHAM WATER WORKS BOARD | ) ) | MDL NO. 2873 |
| | ) | |
| Plaintiff, | ) | Master Docket No:   2:18-mn-2873-RMG |
| | ) | |
| | ) | JUDGE RICHARD GERGEL |
| v. | ) | |
| | ) | Civil Action No:   2:22-cv-4298-RMG |
| 3M COMPANY (f/k/a Minnesota Mining and Manufacturing Company); | ) ) | |
| AGC CHEMICALS AMERICAS INC.; | ) | COMPLAINT AND |
| AMEREX CORPORATION; | ) | JURY DEMAND |
| ARCHROMA U.S. INC.; | ) | |
| ARKEMA, INC.; | ) | |
| BUCKEYE FIRE EQUIPMENT COMPANY; | ) ) | |
| CARRIER GLOBAL CORPORATION; | ) | |
| CHEMDESIGN PRODUCTS, INC.; | ) | |
| CHEMGUARD, INC.; | ) | |
| CHEMICALS, INC.; | ) | |
| CHEMOURS COMPANY FC, LLC; | ) | |
| CHUBB FIRE, LTD; | ) | |
| CLARIANT CORP.; | ) | |
| CORTEVA, INC.; | ) | |
| DEEPWATER CHEMICALS, INC.; | ) | |
| DU PONT DE NEMOURS INC. (f/k/a DOWDUPONT INC.); | ) ) | |
| DYNAX CORPORATION; | ) | |
| E.I. DU PONT DE NEMOURS AND COMPANY; | ) ) | |
| KIDDE-FENWAL, INC.; | ) | |
| KIDDE PLC; | ) | |
| NATION FORD CHEMICAL COMPANY; | ) ) | |
| NATIONAL FOAM, INC.; | ) | |
| THE CHEMOURS COMPANY; | ) | |
| TYCO FIRE PRODUCTS LP, as successor-in-interest to The Ansul Company; | ) ) ) | |
| UNITED TECHNOLOGIES | ) | |

CORPORATION;                      )
UTC FIRE & SECURITY AMERICAS  )
CORP., INC. (f/k/a GE             )
Interlogix, Inc.)                 )
                                  )
            Defendants.           )

## COMPLAINT

COMES NOW the Plaintiff, The Water Works Board of The City of Birmingham (hereinafter "BWWB"), by and through undersigned counsel, and files this complaint against the Defendants alleging as follows:

## SUMMARY OF THE CASE

1.      BWWB is a domestic for-profit corporation chartered under Alabama law and run by an independent Water Board. BWWB provides an industrial water system and sewer system to people in and around the city of Birmingham which includes Jefferson, Shelby, Blount, St. Clair and Walker Counties. BWWB operates four filtration plants: H.Y. Carson Filter Plant, Putnam Station Filter Plant, Western Filter Plant and Shades Mountain Filter Plant. Water comes to the filtration plants from the Black Warrior River Basin and the Cahaba River Basin. The filtration plants supply drinking water to approximately 600,000 customers in and around Birmingham, Alabama. The Plaintiff brings this action in order to address contamination of its water system caused by fluorinated Class B firefighting foam that is manufactured with the synthetic per- and polyfluoroalkyl substances ("PFAS").

2.      In this complaint, the term ("PFAS") refers to a family of synthetic man-made chemicals and surfactants including but not limited to: Perfluorooctanoic acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorohexanoic acid ("PFHxA"), Perfluoropentanoic acid ("PFPA"), Perfluoroheptanoic acid ("PFHpA"), Pentafluorobenzoic acid ("PFBA"),

Perfluorobutanesulfonic acid ("PFBS"), Perfluorononanoic acid ("PFNA"), Perfluorodecacanoic acid ("PFDA") and Perfluorohexane Sulfonic Acid ("PFHS").

3.      In this complaint, the term Aqueous Film-Forming Foam ("AFFF") refers to any fluorinated firefighting foams that contains PFOS and/or PFOA (including any of their salt, ionic or acid forms and their precursors or degradation products) manufactured, sold or distributed by the Defendants for civilian, military and training applications worldwide.

4.      PFOS and PFOA are synthetic fluorinated compounds that are particularly useful for controlling and extinguishing aviation, marine, fuel, and other Class B fires because fluorine atoms have extremely persistent and stable physio-chemical properties.

5.      PFOS and PFOA are soluble in water, not easily biodegradable, and persistent in the environment. Both are known to be harmful to human health. When AFFF containing PFOS or PFOA is released into the environment; both compounds, their precursors and degradation products, can migrate into soil and groundwater. It has been shown that the bioconcentration and bioaccumulation of perfluorinated acids is directly related to fluorination.[1]

6.      AFFF is a specialized manufactured foam designed to extinguish petroleum-based fires. It has been used for decades by military and civilian firefighters to extinguish fires in training exercises and live-fire responses.

7.      PFOA and PFOS are extremely toxic, not easily biodegradable, persistent in the environment and pose a significant risk to animal and human health.

---

[1] Conder, J. M.; Hoke, R.A.; Wolf, W.D.; Russell, M.H.; Buck, R.C. Are PFCAs Bioaccumulative? A Critical Review and Comparison with Regulatory Criteria and Persistent Lipophilic Compounds. *Environ. Sci. Technol*. 2009, 42, 995-1003.

9.      Fire Departments have provided fire protection and response in Birmingham and surrounding areas for decades. Fire departments have used AFFF containing PFOS and PFOA in fire suppression and training activities for many years.

10.     During these activities, AFFF was used as directed by the manufacturer, which allowed PFOS and PFOA to enter the environment. When sprayed onto outdoor surfaces as intended, the compounds migrated through the soil and into the groundwater, thereby contaminating the water pumped into Plaintiff's water supply.

11.     Plaintiff seeks to recover the costs of remediating the contamination, restoring its contaminated drinking water systems that have been, and continue to be, contaminated by PFOS and PFOA related to the manufacture and use of AFFF, and the costs of treating the water produced by the subject wells to remove the PFOS and PFOA.

12.     Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFF with knowledge that it contained highly toxic and bio persistent PFAS, which would expose end users of the product to the risks associated with PFAS. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

13.     The Defendants failed to warn individuals, communities, municipalities, or states of the serious environmental, human, and animal toxicity concerns linked to the use and exposure to fluorinated AFFF foams.

14.    Because the Defendants knowingly placed defective and dangerously toxic fluorinated AFFF foams into the stream of commerce they are strictly liable to the Plaintiff for causing the release of toxic PFAS compounds into the Plaintiff's drinking water supply.

15.    The Defendants sold, manufactured, and distributed AFFF containing fluorinated surfactants touting the superior firefighting performance for decades and deliberately chose not to warn end users or purchasers of the potential environmental or human toxicity concerns linked to fluorinated compounds.

16.    Because the Defendants negligently caused the release of toxic PFAS compounds onto the Plaintiff's drinking water supply they are all jointly and severally liable.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction under federal diversity, pursuant to 28 U.S.C. § 1332(a)(1) because the parties are completely diverse and the amount-in-controversy exceeds $75,000, excluding interest and cost.

18.    Venue is proper in this District Court pursuant this Court's Case Management Order ("CMO") No. 3. Plaintiff states that but for the Order permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the Northern District of Alabama. In accordance with CMO 3, Plaintiff designates the United States District Court for Northern District of Alabama as the home venue.

19.    Venue is originally proper in the District Court pursuant to 28 U.S.C. § 1391 because it is the judicial district in which the Plaintiff is a corporate citizen, a substantial part of the events or omissions giving rise to the claim occurred, and the Defendant's conduct business within the district.

## PARTIES

20.     The Plaintiff is a public water provider, existing under the laws of the State of Alabama. Plaintiff supplies water to customers in and around Birmingham, Alabama including Jefferson, Shelby, Walker, Blount and St. Clair Counties. Plaintiff has a property interest in the water it appropriates, treats, stores, and distributes to the public as well as in its piping, distribution system, and water treatment facilities.

21.     Defendants are designers, marketers, developers, manufacturers, distributors, releasers, instructors, promotors and sellers of PFAS-containing AFFF products or underlying PFAS containing chemicals used in AFFF production.  The Defendants, at all times relevant to this lawsuit, manufactured, designed, marketed, distributed, released, instructed, promoted and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations for use in fighting Class B fires such that each Defendant knew or should have known said products would be used by purchasers during the course of training and firefighting activities.

22.     Defendant, 3M Company, f/k/a Minnesota Mining and Manufacturing Company, ("3M"), is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.

23.     3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

24.    Defendant AGC Chemicals Americas, Inc. ("ACG") is a Delaware corporation and does business throughout the United States. ACG has its principal place of business at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341.

25.    AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

26.    Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

27.    Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

28.    Defendant Archroma U.S. Inc. ("Archroma") is a North Carolina company and does business throughout the United States. Archroma has its principal place of business at 5435 77 Center Drive, #10 Charlotte, North Carolina 28217. Upon information and belief, Archroma was

formed in 2013 as part of the acquisition of Clariant Corporation's Textile Chemicals, Paper Specialties and Emulsions business by SK Capital Partners.

29.     Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

30.     Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

31.     Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

32.     Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

33.    Buckeye designed, marketed, developed, manufactured, distributed, released, trained

users, produced instructional materials, sold and/or otherwise handled and/or used AFFF

containing PFAS that are used in firefighting training and response exercises which are the

subject of this Complaint. Further, defendant designed, marketed, developed, manufactured,

distributed, released, trained users, produced instructional materials, promoted, sold and/or

otherwise handled and/or used underlying chemicals and/or products added to AFFF which

contained PFAS for use in firefighting.

34.    Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation and does

business throughout the United States. Carrier has its principal place of business at 13995

Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier

was formed in 2020 and is the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF.

35.    Carrier designed, marketed, developed, manufactured, distributed, released, trained users,

produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF

containing PFAS that are used in firefighting training and response exercises which are the

subject of this Complaint.  Further, defendant designed, marketed, developed, manufactured,

distributed, released, trained users, produced instructional materials, promoted, sold and/or

otherwise handled and/or used underlying chemicals and/or products added to AFFF which

contained PFAS for use in firefighting.

36.    Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation and does

business throughout the United States. ChemDesign has its principal place of business at 2

Stanton Street, Marinette, Wisconsin 54143.

37.    ChemDesign designed, marketed, developed, manufactured, distributed, released, trained

users, produced instructional materials, promoted, sold and/or otherwise handled and/or used

AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

38.    Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States.  Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

39.    Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

40.    Defendant Chemicals, Inc. ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

41.    Chemicals designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or

otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

42.     Defendant Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899.  Chemours FC is a subsidiary of The Chemours Company.

43.     Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

44.     Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ. Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210.  Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

45.     Chubb Fire designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials,

promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

46.    Defendant Clariant Corporation ("Clariant") is a New York corporation and does business throughout the United States. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

47.    Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint.  Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

48.    Defendant Corteva, Inc. ("Corteva") is a Delaware Corporation that conducts business throughout the United States. Its principal place of business is Chestnut Run Plaza 735, Wilmington, Delaware 19805. Corteva is the successor-in-interest to Dupont Chemical Solutions Enterprise.

49.    Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

50.     Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does business throughout the United States. Deepwater's principal place of business is at 196122 E County Road 735, Woodward, Oklahoma 73801.

51.     Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

52.     Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a Delaware corporation and does business throughout the United States. DowDuPont, has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDuPont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers.

53.     DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

54.    Defendant Dynax Corporation ("Dynax") is a New York corporation that conducts business throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

55.    Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

56.    Defendant E. I. du Pont de Nemours and Company ("DuPont") is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

57.    DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

58.    Defendant Kidde-Fenwal, Inc.  ("Kidde-Fenwal") is a corporation organized under the laws of the State of Delaware and does business throughout the United States. Kidde-Fenwal has its principal place of business at One Financial Plaza, Hartford, Connecticut 06101. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.) (collectively, "Kidde/Kidde Fire").

59.     Kidde-Fenwal designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

60.     Defendant Kidde P.L.C., Inc. ("Kidde P.L.C.") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. Kidde P.L.C. has its principal place of business at One Carrier Place, Farmington, Connecticut 06034. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

61.     Kidde P.L.C. designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

62.     Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina company and does business throughout the United States. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715.

63.     Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed,

developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

64.     Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business throughout the United States. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina, 27501.

65.     National Foam designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint.  Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

66.     Defendant the Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007 Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

67.     Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

68.    Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

69.    Tyco is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

70.    Defendant United Technologies Corporation ("United Technologies") is a foreign corporation organized and existing under the laws of the State of Delaware and does business throughout the United States. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

71.    United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

17

72.     Defendant UTC Fire & Security Americas Corporation, Inc.  (f/k/a GE Interlogix, Inc.) ("UTC") is a North Carolina corporation and does business throughout the United States. UTC has principal place of business at 3211 Progress Drive, Lincolnton, North Carolina 28092. Upon information and belief, Kidde-Fenwal, Inc. is part of the UTC Climate Control & Security unit of United Technologies Corporation.

73.     UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

74.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

75.     The term "Defendant" or "Defendants" refers to all Defendants named in this Complaint jointly and severally, unless otherwise stated.

## FACTUAL ALLEGATIONS

76.     Aqueous Film-Forming Foam ("AFFF") is a combination of chemicals used to extinguish hydrocarbon fuel-based fire.

77.     AFFF-containing fluorinated surfactants have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish fire by smothering, ultimately starving it of oxygen.

78.     AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

79.     Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting, that were used by entities around the country, including military, county, and municipal firefighting departments.

80.     Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS, in such a way as to cause environmental and economic injuries, contamination and unlawful incursion onto the Plaintiff's land, surface and subsurface soil, sediment, natural resources, and real property.

81.     AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world. It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

82.     PFAS are a family of chemical compounds containing fluorine and carbon atoms.

83.     PFAS have been used for decades in the manufacture of AFFF. The PFAS family of chemicals are entirely human-made and do not naturally occur or otherwise exist.

84.     Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in human blood.

19

## AFFF /PFAS HAZARDOUS EFFECTS

85.    Concentrations of PFAS present a risk to human health.

86.    Exposure to Defendants' AFFF has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, liver cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease, and infertility.

87.    The United States Environmental Protection Agency ("USEPA") has issued interim Health Advisory Values for PFOA found in drinking water of 0.004 parts per trillion ("ppt"), and for PFOS found in drinking water of 0.02 ppt, as well as final health advisories for GenX chemicals found in drinking water of 10 ppt, and for PFBS found in drinking water of 2000 ppt.

88.    By at least the end of the 1960s, animal toxicity testing performed by Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

89.    By at least the end of the 1960s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that such materials, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

90.    By at least the end of the 1970s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of the exposed individuals with each additional exposure.

91.     By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

92.     It was understood by Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans unless the precise mechanism of action by which the tumors were caused was known and would not occur in humans.

93.     By at least the end of the 1980s, scientists had not determined the precise mechanism of action by which any PFAS caused tumors. Therefore, scientific principles of carcinogenesis classification mandated Defendants presume any such PFAS material that caused tumors in animal studies could present a potential cancer risk to exposed humans.

94.     By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

95.     By at least the end of the 1980s, Defendants, including at least 3M and DuPont, understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and accumulate in the human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life. Meaning that it would take a very long time before even half of the material would start to be eliminated, which allowed

increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposure continued.

96.    By at least the end of the 1990s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

97.    By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

98.    By at least 2010, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

99.    When the USEPA and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

100.    After the USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, Defendants began manufacturing and/or using and/or began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

101.    Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

102.    By at least the mid-2010s, Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

103.    Research and testing performed by and/or on behalf of Defendants making and/or using Short-Chain PFAS indicates that such Short-Chain PFAS materials present the same, similar, and/or additional risks to human health as had been found in research on other PFAS materials, including cancer risk.

104.    Nevertheless, Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including Short-Chain PFAS, in human blood at the levels found within the United States present no risk of harm and is of no legal, toxicological, or medical significance of any kind.

105.    At all relevant times, Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards Defendants deem acceptable.

106.    Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind, and have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate.

107.    At all relevant times, Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

108.    As of the present date, blood serum testing and analysis by Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

109.    There is no naturally occurring "background," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants.

110.    At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was

published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiff from discovering the existence and extent of any injuries/harm as alleged herein.

111.    At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

112.    At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiff to the legal, toxicological, medical, or other significance and/or risk from PFAS contamination and possible human health effects.

113.    At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of AFFF containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage and foster the increased and further use of PFAS in connection  with  as  many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

114.    To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

115.     To this day, Defendants deny that any scientific study, research, testing, or other work of any kind has been performed that is sufficient to suggest to the public that the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical, or other significance.

116.     Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

117.     Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of AFFF containing PFAS would result in the contamination of the property of Plaintiff with PFAS, and the biopersistence and bioaccumulation of such PFAS in property.

118.     Defendants were and /or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the property of Plaintiff would cause injury and irreparable harm.

119.     Defendants did not seek or obtain permission or consent from Plaintiff before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in Plaintiff's property contamination to AFFF, and resulting biopersistence and bioaccumulation of such PFAS on Plaintiff's property.

## DEFENDANTS' HISTORY OF MANUFACTURING AND SELLING AFFF

120.    3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s.  In the 1960s, 3M used its fluorination process to develop AFFF.

121.    3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.

122.    In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related products, including AFFF. 3M, in its press release announcing the phase out, stated "our products are safe," and that 3M's decision was "based on [its] principles of responsible environment management."  3M further stated that "the presence of these materials at very low levels does not pose a human health or environmental risk."  In communications with the EPA at that time, 3M also stated that it had "concluded that…other business opportunities were more deserving of the company's energies and attention…"

123.    Following 3M's exit from the AFFF market, the remaining Defendants continued to manufacture and sell AFFF that contained PFAS and/or its precursors.

124.    Defendants knew their customers warehoused large stockpiles of AFFF. In fact, Defendants marketed their AFFF products by touting its shelf-life. Even after Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans following exposure, Defendants concealed the true nature of PFAS. While Defendants phased out production or transitioned to other formulas, they did not instruct their customers that they should not use AFFF that contained PFAS and/or their precursors. Defendants further did not act to get their harmful products off the market.

125.    Defendants did not warn public entities, firefighter trainees who they knew would foreseeably come into contact with their AFFF products, or firefighters employed by either civilian

and/or military employers that use of and/or exposure to Defendants' AFFF products containing PFAS and/or its precursors would pose a danger to human health

126.    The Plaintiff was never informed that this product was inherently dangerous. Nor was the Plaintiff warned about the known environmental contamination risks associated with this product.

127.    Defendants have known of the health hazards associated with AFFF and/or its compounds for decades and that in their intended and/or common use would cause environmental contamination.

128.    Information regarding AFFF and its compounds were readily accessible to each of the above-referenced Defendants for decades because each is an expert in the field of AFFF manufacturing and/or the materials needed to manufacture AFFF, and each has detailed information and understanding about the chemical compounds that form AFFF products.

129.    The AFFF Defendants through their manufacturing, distribution and/or sale of AFFF, and through their involvement and/or participation in the creation of training and instructional materials and activities, knew, foresaw, and/or should have known and/or foreseen that the Plaintiff and those similarly situated would be harmed.

130.    The AFFF Defendants' products were unreasonably dangerous and the Defendants failed to warn of this danger.

**IMPACT OF PFOA AND PFOS ON PLAINTIFF'S WATER SUPPLY**

131.    PFAS has been detected in varying amounts at varying times in water extracted from Plaintiff's basins. PFOA, PFOS, PFBS, PFHxA, and PFPeA have been detected and/or are present in certain of Plaintiff's basins at levels above the federally advised Health Advisory Levels.  The detection and/or presence of PFAS, and the threat of further detection and/or

presence of PFAS in Plaintiff's water supply in varying amounts and at varying times has resulted, and will continue to result, in damage to Plaintiff.

132.    Testing performed on the tap water of Plaintiff's customers in 2019 revealed a combined PFOA and PFOS level of as high as 5.3 ppt, exceeding the current EPA health advisory.

133.    Testing at Plaintiff's Shades Mountain Water Filter Plant in 2019 revealed the presence of PFOA as high as 2.2 ppt, PFOS as high as 2.4 ppt, in Plaintiff's drinking water supply, exceeding the current USEPA health advisory. It also revealed the presence of PFBS as high as 5.1 ppt, and PFHxA as high as 4.0 ppt.

134.    Testing at Plaintiff's Shades Mountain Water Treatment Plant in 2020 revealed the presence of PFOS as high as 2.3 ppt in Plaintiff's drinking water supply, exceeding the current EPA health advisory, as well as PFBS as high as 2.2 ppt.

135.    Testing at Plaintiff's Cahaba Pump Station in 2020 revealed the presence of PFOS as high as 2.6 ppt in adjacent surface water, exceeding the current EPA health advisory, as well as PFBS as high as 2.1 ppt.

136.    The contamination of Plaintiff's basins with PFOA and PFOS is continuing. New contamination periodically flows into the basins, as recent studies have shown levels of PFOA as high as 2 ppt in the Black Warrior River and 3.3 ppt in the Cahaba River, levels of PFOS as high as 3.9 ppt in the Black Warrior River and 4.4 ppt in the Cahaba River, levels of PFHxA as high as 1.8 ppt in the Black Warrior River and 4.2 ppt in the Cahaba River, levels of PFPeA as high as 2.2 ppt in the Black Warrior River and 6.0 ppt in the Cahaba River, and levels of PFBS as high as 1.3 ppt in the Black Warrior River and 5.7 ppt in the Cahaba River.

137.    Investigation of AFFF-related contamination in the water supply is ongoing.

138.    PFAS have characteristics that have resulted in their extensive and persistent contamination of Plaintiff's water supply.

139.    PFAS – including PFOA and PFOS – can persist in an environment indefinitely due to their multiple fluorine-carbon bonds, which are exceptionally strong and stable. These bonds are resistant to metabolic and environmental degradation processes.

140.    PFAS – including PFOA and PFOS – are toxic. These compounds can cause adverse impacts to not only the environment, but also to animal and human health.

141.    Defendants' conduct constitutes an interference with, and damage to, the subterranean supplies of water on which Plaintiff's water supply depends.

## COUNT I- NEGLIGENCE

142.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

143.    As manufacturers, refiners, formulators, distributors, suppliers, sellers, marketers, shippers, and handlers of AFFF products, Defendants owed a duty to Plaintiff to exercise due care in the handling, control, disposal, sale, testing, labeling, use, warning, and instructing for use of AFFF products..

144.    Despite the fact that Defendants knew that PFAS can contaminate water resources and present human health risks, Defendants negligently: (a) designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFAS containing products; (b) issued instructions on how AFFF products should be used and disposed of, thus improperly permitting PFAS to contaminate the groundwater in and around Plaintiff's basins; (c) failed to recall and/or warn Plaintiff and the users of AFFF products of the dangers of groundwater contamination as a result of standard use and disposal of this product; and (d) failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF products

containing PFAS regarding the proper use and disposal of products containing this toxic chemical.

145.    Among other things, Defendants breached their duty when they manufactured, marketed, distributed, supplied and sold fluorinated AFFF even though they knew or should have known the dangers that PFAS posed to natural resources. Defendants should have known that the manner in which they were manufacturing, marketing and selling AFFF containing PFAS compounds would result in the contamination.

146.    Defendants knew or should have known that exposure to PFAS is hazardous to the environment and to human and animal health.

147.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff's basins and the groundwater that supplies them have been, and continue to be, contaminated with PFAS, causing Plaintiff damage. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has incurred, is incurring, and will continue to incur damages, including investigation, treatment, remediation, and monitoring costs and expenses related to the PFAS contamination of its water supply.

148.    As a direct and proximate result of Defendant's acts or omissions as alleged in this Complaint, Plaintiff has incurred, is incurring, and will continue to incur substantial damages related to the release of fluorinated PFAS containing AFFF in amounts to be provided at trial.

149.    Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination

150.    Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct

and its reasonably foreseeable impacts on the public health and welfare. Therefore, Plaintiff request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

151.    Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

152.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT II – PUBLIC NUISANCE

153.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

154.    Defendants have manufactured, distributed, marketed, and/or promoted their AFFF products in a manner that created or participated in creating a public nuisance that unreasonably endangers or injures the property, health, safety, and comfort of the general public and/or Plaintiff, causing inconvenience and annoyance.

155.    Defendants, by their acts and omissions set forth above have, among other things, caused PFOA and/or PFOS contamination of groundwater and contamination and threat of contamination of Plaintiff's water supply. Consequently, Defendants' substantially interfered with and caused damages to public or common resources that endanger municipal property, as well as the health, safety and welfare of its citizens. Such action creates, contributes to, or maintains a public nuisance.

156.    Actual and threatened PFAS contamination caused by Defendants' conduct has caused and continues to cause injury to Plaintiff in the form of interference with the use, benefit, and/or

enjoyment of its property in a way that an ordinary, reasonable person would find is a substantial inconvenience and annoyance.

157.    Defendants knew or in the exercise of reasonable care should have known that the use and introduction of PFAS into the environment would and has unreasonably endangered and interfered with the ordinary use and enjoyment of groundwater resources relied upon by Plaintiff.

158.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of the Plaintiff's property. Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud and/or malice. Such conduct was performed to promote sales of fluorinated AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

159.    Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

160.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT III – PRIVATE NUISANCE

161.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

162.    The groundwater that supplies Plaintiff's basins has been contaminated by PFAS as a direct and proximate result of the conduct of Defendants.

163.    Defendant's intentional, negligent, and/or reckless conduct, as alleged herein, has resulted in substantial toxic PFAS contamination.

164.    Defendant's manufacture, distribution, sale, supply and marketing of fluorinated PFAS containing AFFF was unreasonable because Defendant's had knowledge of PFAS unique and dangerous chemical properties and knew that contamination of municipal lands and natural resources was substantially certain to occur, but failed to provide adequate warning of, or take any precautionary measures to mitigate, those hazards.

165.    The toxic PFAS contamination of the property caused, contributed to, and or maintained by Defendants substantially and unreasonably interferes with Plaintiff's property rights and with the use and enjoyment of economic and natural resources.

166.    Each Defendant has caused, contributed to, and/or maintained such nuisance, and is a substantial contributor to such nuisance.

167.    As a direct and proximate result of Defendant's acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur  damages related to toxic PFAS contamination in an amount to be proven at trial.

168.    Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination. Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare. Therefore, Plaintiff request an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

169.    Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

170.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT IV – TRESPASS

171.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

172.    Plaintiff is the owner and/or actual possessor of the water supply and has the right to appropriate and use groundwater. Defendants knew, or in the exercise of reasonable care should have known, that PFAS would contaminate groundwater and public water systems, including the property and other rights of Plaintiff.

173.    Plaintiff did not give any Defendant permission to cause PFAS to enter onto its property.

174.    Defendants knew or should have known that:

   a.  PFAS have a propensity to infiltrate soils, sediments biota and other vital natural resources when released into the environment;

   b.  PFAS are mobile and persistent compounds capable of moving substantial distances through aquifers, soil and sediments;

   c.  PFAS compounds are toxic to human and animal health; and

   d.  PFAS compounds are therefore hazardous to public health and welfare and likely to cause ecological and economic injuries when released into the environment.

175.    Defendants manufactured, promoted, marketed, distributed, and/or sold AFFF containing PFAS, which Defendants knew or reasonably should have known would certainly be discharged and release toxic PFAS which intrude upon, contaminate and damage the Plaintiff's property rights and possessory interest.

176. Defendants willful conduct directly resulted in the placement of PFAS on and in property owned by the Plaintiff without permission or right of entry.

177. Each Defendant is a substantial factor in bringing about the contamination; and each Defendant aided and abetted the trespasses and is jointly and severally liable for the injuries and damages caused to the Plaintiff.

178. As a direct and proximate result of Defendant's acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur damages related to toxic PFAS contamination in an amount to be proven at trial.

179. Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of the Plaintiff's property. Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

180. Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

181. Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT V – DEFECTIVE DESIGN

182.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

183.    Defendant's AFFF was defective in design or formulation in a manner that rendered the products unreasonably dangerous to purchasers and end users of AFFF.

184.    As commercial designers, manufactures, distributors, suppliers, sellers and or marketers of AFFF containing PFAS, Defendants has a strict duty not to place into the stream of commerce a product that is defective or unreasonably dangerous.

185.    Defendants knew that third parties would purchase AFFF containing PFAS and use it without inspection for defects.

186.    At the time of manufacture, Defendants knew that the chosen formulation of AFFF was not biodegradable and bioaccumulated in property, fish, wildlife, and humans.

187.    AFFF containing PFAS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties were applied, discharged, disposed of, or otherwise released onto the Plaintiff's property at various locations over time and in various amounts.

188.    The AFFF containing PFAS purchased by third parties was used in a foreseeable manner and without substantial change in the condition of such products.

189.    Defendants knew, or reasonably should have known, that the use of AFFF containing PFAS in its intended manner would foreseeably result in the spillage, discharge, disposal, or release of PFAS into Plaintiff's property.

190.    The AFFF containing PFAS released onto the Plaintiff's property was defective in design and unreasonably dangerous because, among other things:

        a.    PFAS have a propensity to infiltrate soils, sediments biota and other vital natural resources when released into the environment;

b. PFAS are mobile and persistent compounds capable of moving substantial distances through aquifers, soil and sediments;

c. PFAS compounds are toxic to human and animal health; and

d. PFAS compounds are therefore hazardous to public health and welfare and likely to cause ecological and economic injuries when released into the environment.

191.    Defendants' manufactured, promoted, marketed, distributed, and/or sold AFFF containing PFAS, which Defendants knew or reasonably should have known would certainly be discharged and release toxic PFAS into the ground and intrude upon, contaminate and damage the Plaintiff's property rights and possessory interest.

192.    Defendant's willful conduct directly resulted in the placement of its product, AFFF, on and in property owned by the Plaintiff without permission or right of entry.

193.    Each Defendant is a substantial factor in bringing about the contamination of the Plaintiff's property; and each Defendant is jointly and severally liable for the injuries and damages caused to the Plaintiff.

194.    As a direct and proximate result of Defendant's acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur economic damages related to toxic PFAS contamination of the Plaintiff's water supply in an amount to be proven at trial.

195.    Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of the Plaintiff's property. Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare. Therefore, Plaintiff requests an

award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

196.    Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

197.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT VI – STRICT LIABILITY – DEFECTIVE PRODUCT

198.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

199.    Defendants' AFFF was defective in design or formulation in a manner that rendered the products unreasonably dangerous to purchasers and end users of AFFF.

200.    As commercial designers, manufactures, distributors, suppliers, sellers and or marketers of AFFF containing PFAS, Defendants has a strict duty not to place into the stream of commerce a product that is defective or unreasonably dangerous.

201.    Defendants knew that third parties would purchase AFFF containing PFAS and use it without inspection for defects.

202.    At the time of manufacture, Defendants knew that the chosen formulation of AFFF was not biodegradable and bioaccumulated in property, fish, wildlife, and humans.

203.    AFFF containing PFAS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties were applied, discharged, disposed of, or otherwise released onto the Plaintiff's property at various locations over time and in various amounts.

204.    The AFFF containing PFAS purchased by third parties was used in a foreseeable manner and without substantial change in the condition of such products.

205.    Defendants knew, or reasonably should have known, that the use of AFFF containing PFAS in its intended manner would foreseeably result in the spillage, discharge, disposal, or release of AFFF onto Plaintiff's property.

206.    The AFFF containing PFAS released onto the Plaintiff's property was defective in design and unreasonably dangerous because, among other things:

    a.  PFAS causes extensive and persistent contamination even when products containing it are used in their foreseeable and intended manner.

    b.  PFAS contamination poses significant threats to public health and welfare.

    c.  Defendants failed to conduct and/or failed to disclose reasonable, appropriate, or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of PFAS.

207.    At all times relevant to this action, AFFF containing PFAS was dangerous to an extent beyond that which would be contemplated by the ordinary consumer, and/or the foreseeable risk of harm to public health and welfare posed by PFAS outweighed the cost to Defendants of reducing or eliminating such risk.

208.    Defendants knew or should have known about feasible alternatives to producing AFFF without the use of PFAS, and the omission of such alternative designs rendered AFFF not reasonably safe.

209.    As a direct and proximate result of the defects previously described, Plaintiff's property has been, and continues to be, contaminated with PFAS in varying amounts over time, causing Plaintiff significant injury and damage.

210.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur damages related to PFAS contamination of its municipal real property.

211.    Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of the Plaintiff's property. Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

212.    Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

213.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT VII STRICT LIABILITY – FAILURE TO WARN

214.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

215.    As commercial distributors, sellers, manufacturers, suppliers, marketers  and/or designers  of  AFFF,  Defendants  had  a  strict  duty  to  warn  against  latent  dangers  resulting from  foreseeable uses of the product that Defendants knew or should have known about.

216.    At the time of marketing, when the AFFF left control of the Defendants, Defendants knew, or in the exercise of reasonable care, should have known that the AFFF was not biodegradable, and that it bioaccumulated in fish, wildlife and humans, and knew they were providing an inadequate warning or instruction about the inherent danger of allowing the AFFF to be released into the environment.

217.    Defendants knew that third parties would purchase AFFF containing PFAS and expect that it was biodegradable and use it at fire training facilities and during live fire operations where runoff would permeate the Plaintiff's property.

218.    AFFF containing PFAS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties was applied, discharged, disposed of, or otherwise released at various locations, at various times, and in various amounts onto the Plaintiff's property.

219.    The AFFF containing PFAS purchased by third parties was used in a reasonably foreseeable manner and without substantial change in the condition of such products.

220.    Defendants knew or should have known that the use of AFFF containing PFAS in its intended manner would result in the discharge, disposal, or release of PFAS onto the Plaintiff's property.

221.    The AFFF containing PFAS used in the vicinity of Plaintiff's property was defective in design and unreasonably dangerous for the reasons set forth above.

222.    Despite the known and/or reasonably foreseeable hazards to property and human health and welfare associated with the use of AFFF containing PFAS the Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

223. In particular, the Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their AFFF products containing PFAS.

224. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur substantial damages related to PFAS contamination in an amount to be proven at trial.

225. Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of Plaintiff's property.

226. Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

227. Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below

228. Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT VIII – FRAUDULENT CONCEALMENT

229. Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

230.    Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

231.    Defendants fraudulently concealed from and/or failed to disclose to or warn the Plaintiff, and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

232.    Defendants were under a duty to the Plaintiff and the public to disclose and warn of the defective and harmful nature of the products because:

      a.  Defendants were in a superior position to know the true quality, safety and efficacy of the Defendants' products;

      b.  Defendants knowingly made false claims about the safety and quality of the Defendants' product in documents and marketing materials; and

      c.  Defendants fraudulently and affirmatively concealed the defective nature of the Defendants' products from the Plaintiff.

233.    The facts concealed and/or not disclosed by Defendants were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use the Defendants' products.

234.    Defendants intentionally concealed and/or failed to disclose the true defective nature of the products, the Plaintiff justifiably acted or relied upon, to Plaintiff's detriment, the concealed and/or non-disclosed facts.

235.    Defendants, by concealment or other action, intentionally prevented the Plaintiff from acquiring material information regarding the lack of safety and effectiveness of the Defendants' products and are subject to the same liability to the Plaintiff for Plaintiff's pecuniary losses, as though Defendants had stated the non-existence of such material information regarding the Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that the Plaintiff was thus

prevented from discovering the truth. Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

236.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur substantial environmental damages related to PFAS contamination in an amount to be proven at trial.

237.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of Plaintiff's property.

238.    Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

239.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below

240.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT IX - WANTONESS

241.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

242.    Defendants and their employees, agents, officers, and representatives owed a duty of care to anyone potentially impacted by their PFAS containing AFFF.

243.    Defendants breached the duty of care owed to the Plaintiff.

244.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the property and safety of the Plaintiff.

245.    As a proximate and foreseeable consequent of the actions of Defendants, Plaintiff's property was contaminated by an unreasonably dangerous toxic PFAS containing AFFF, which caused Plaintiff's property injury.

246.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur substantial economic and environmental damages related to PFAS contamination in an amount to be proved at trial.

247.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of Plaintiff's property.

248.    Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice. Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

249.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below

250.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

216.    Plaintiff had no way of knowing about the risk of property damage associated with the use of and exposure to AFFF until very recently.

217.    Within the time period of any applicable statute of limitations, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to property and can cause widespread contamination.

218.    Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF; nor would a reasonable and diligent investigation by Plaintiff have disclosed that AFFF could cause property damage.

219.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### Fraudulent Concealment Tolling

220.    All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

221.    Instead of disclosing critical information regarding AFFF, Defendants have consistently and falsely represented that their AFFF products do not contaminate the environment.

222.    This fraudulent concealment continues through present day.

223.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

224.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Plaintiff, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF.

225.    Instead, Defendants knowingly, affirmatively, and actively concealed information concerning AFFF and the serious risks associated with the use of AFFF.

226.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, on each of the above-referenced claims and Causes of Action as follows:

Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to,

a.    costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination in Plaintiff's drinking water supplies, basins, system, and facilities;

b.    costs and expenses related to past, present, and future treatment and remediation of PFAS contamination of its water supplies, basins, system, and facilities or, in the alternative, costs and expenses related to replacement of those basins and facilities; and

c.    costs and expenses related to past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFOA and/or PFOS in Plaintiff's water supplies, basins, system, and facilities.

Punitive and/or exemplary damages for the wanton, willful, fraudulent, and/or reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the

property rights of the Plaintiff and of the general public and to the Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

Costs of testing of property and additional monitoring to determine the potential presence on PFAS compounds;

Awarding Plaintiff attorneys' fees;

Awarding Plaintiff the costs of these proceedings; and

Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

The Plaintiff hereby demands a trial by jury.

**ENVIRONMENTAL LITIGATION GROUP, P.C.**

*/s/ Gregory A. Cade_____* ___
Gregory A. Cade
Gary A. Anderson
Kevin B. McKie
ENVIRONMENTAL LITIGATION GROUP, P.C.
2160 Highland Avenue South
Birmingham, AL 35205
Telephone: 205-328-9200
Facsimile: 205-328-9456